**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAURA KELLER,** | **:** | |
| **Plaintiff** | **:** | **CIVIL ACTION NO. 15-2511** |
| **v.** | **:** | **(JUDGE MANNION)** |
| **LACKAWANNA COUNTY,** | **:** | |
| **WILLIAM BROWNING,** | | |
| **Individually, and AMERICAN** | **:** | |
| **FEDERATION OF STATE,** | | |
| **COUNTY AND MUNICIPAL** | **:** | |
| **EMPLOYEES, AFL-CIO, DISTRICT** | | |
| **COUNCIL 87,** | **:** | |
| **Defendants** | **:** | |

**<u>MEMORANDUM</u>**

Presently before the court are a motion for summary judgment filed on behalf of the defendant American Federation of State, County and Municipal Employees, AFL-CIO, District 87 ("AFSCME"), (Doc. 45), and a motion for summary judgment filed on behalf of defendants Lackawanna County and William Browning ("Lackawanna County defendants"), (Doc. 48). Based upon the court's review of the record, the defendants' motions will be **GRANTED**.

**I.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery

[including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a

genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party

can discharge the burden by showing that "on all the essential elements of its

case on which it bears the burden of proof at trial, no reasonable jury could

find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir.

2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial

burden, the non-moving party "must do more than simply show that there is

some metaphysical doubt as to material facts," but must show sufficient

evidence to support a jury verdict in its favor. Boyle v. County of Allegheny,

139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving

party "fails to make a showing sufficient to establish the existence of an

element essential to [the non-movant's] case, and on which [the non-movant]

will bear the burden of proof at trial," Rule 56 mandates the entry of summary

judgment because such a failure "necessarily renders all other facts

immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La

Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).


## II.    FACTUAL BACKGROUND

The plaintiff has brought the instant action alleging an interference claim

under the Family Medical Leave Act ("FMLA") against the Lackawanna County defendants ("Count I"); a retaliation claim under the FMLA against the Lackawanna County defendants ("Count II"); a breach of collective bargaining agreement ("CBA") claim against all defendants ("Count III"); a breach of the Union's duty of fair representation against defendant AFSCME ("Count IV"); discrimination and retaliation claims under the Americans with Disabilities Act ("ADA") against the Lackawanna County defendants ("Count V"); and a violation of the Pennsylvania Human Relations Act ("PHRA") against defendant Browning ("Count IV").

With respect to the plaintiff's claims against the Lackawanna County defendants, the undisputed facts of record, as taken from the moving parties' statements of facts and responded to by the plaintiff, demonstrate that the plaintiff was an employee of the Lackawanna County Department of Human Services Office of Youth and Family Services ("OYFS"), formerly the Lackawanna County Children and Youth Services agency, from September 23, 1992, through the date of her termination on June 16, 2015. While with OYFS, the plaintiff was employed in various roles, including intake caseworker, caseworker II, and caseworker supervisor. As an OYFS caseworker, the plaintiff's duties included receiving referral allegations of child

abuse and/or neglect, investigating referred complaints of child abuse and/or neglect, conducting safety risk assessments concerning the referred children and providing supportive and placement prevention services to the childrens' families. While employed, the plaintiff received ongoing child welfare training which included safety, investigation and how to do a risk assessment. The fundamental aspect of the plaintiff's job was "making sure the kids [on her caseload] were safe at all times," and her most important duties were those she performed "in order to keep the kids safe," which included making home visits, talking to parents and making plans for the family regarding what steps needed to be taken to keep the kids safe. In performing their duties, all OYFS caseworkers are required to follow state issued regulations.

Beginning sometime in January 2015, the plaintiff testified that she was being assigned more work than any other caseworker. In mid-February 2015, after she determined the actual numbers of cases assigned to each of the caseworkers, the plaintiff took those numbers to her supervisor and indicated there was an issue with the new case assignment rotation. On or about February 28, 2015, the plaintiff was told she would be removed from the case rotation system and was given as much time and overtime as she needed to get caught up on the work she had been assigned. The plaintiff testified that

she was taken out of the rotation, but still received 14 cases in March 2015. However, by the end of March 2015, the plaintiff testified that her caseload was "in line" with everybody else's.

In April 2015, the plaintiff was assigned a case referred to OYFS involving an allegation that a 15-year old boy engaged in sexual misconduct with a 6-year old child in the neighborhood.[1] The alleged perpetrator's initials are "AB" and the parties have referred to this case as the "BB" matter. The plaintiff visited AB's home and met with his mother and her three children, including AB, who was the oldest of the children. At that time, the plaintiff spoke with the AB's mother regarding the allegations of sexual abuse against AB.

Subsequently, the plaintiff spoke with AB's mother regarding what

---

[1]The plaintiff denies this statement and others indicating that the record pages cited by the defendants do not support the facts. While the court agrees that certain specific details provided in the facts, such as the age of the alleged perpetrator, are not contained in the pages cited by the defendant, those specifics are clearly contained throughout the record. Both parties' counsel are cautioned in this regard. The defendants' counsel is advised to provide more accurate record citations to stated facts. Neither the court nor the plaintiff's counsel should be required to search the record to confirm the information contained in the defendants' facts. On the other hand, the plaintiff's counsel is advised not to deny facts for the sake of denying facts, especially those to which the plaintiff herself has testified and which are clearly contained throughout the record.

arrangements would be made for the two younger children when the mother returned to work. According to the plaintiff's testimony, the mother's plan was to have AB, the oldest child and the alleged perpetrator of the sexual misconduct, watch the younger children when they got off of the school bus until she came home from work, a period of approximately 20 minutes. The plaintiff discussed several other options with the mother, including having someone else watch the children. The plaintiff testified that she informed the mother that she needed to take the situation seriously when considering leaving the children alone with AB. However, the plaintiff further testified that she gave the mother the option of leaving the children alone with AB because the allegation of abuse concerned a neighbor child and not the siblings whom he would be watching.[2] At the time, the plaintiff was aware that there was an ongoing police investigation into the allegations against AB. Prior to giving AB's mother the option to allow AB to supervise the children, the plaintiff did not have any direct contact with the police officer investigating the BB case. The plaintiff testified that she attempted to contact the investigating officer, but was unable to do so. Therefore, the plaintiff did not know the status of the

[2]It is noted that there had been a prior claim against AB related to one of the younger siblings. However, after investigation, the claim was determined to be unfounded.

police investigation when she gave AB's mother the option of allowing AB to watch the younger children. Further, the plaintiff testified that there is a high probability that a sexual perpetrator will perpetrate again, if given the opportunity, and that an alleged perpetrator would have the opportunity to perpetrate again, if left in control of two young children.

The same month the plaintiff was assigned the AB matter, her supervisor, Brian Davis, conducted a file review and discovered that the plaintiff had given AB's mother the option to leave AB in charge of his younger siblings. Mr. Davis made contact with the police officer investigating the BB case, who informed Mr. Davis that AB had been interviewed and had, in fact, admitted to sexually abusing the neighborhood child. Although the plaintiff testified that, at the time of her involvement, there were only allegations of sexual misconduct against AB, her case manager, Jason Kavulich, determined that her handling of the matter appeared to rise to the level of Neglect of Duty Where Persons are Endangered under the OYFS discipline policy.

Sometime between April 17, 2015 and April 24, 2015, Mr. Kavulich informed the plaintiff that there were concerns regarding her handling of the BB case and that they were going to have a meeting to address those

concerns.[3] The plaintiff testified that she was worried about the meeting and about the possibility that she may be terminated at the meeting because of the demeanor of Mr. Kavulich and Mr. Davis regarding the matter. A letter was issued giving the plaintiff notice of an "investigatory (due process) meeting" scheduled for April 28, 2015 related to "serious concerns" regarding the plaintiff's handling of the BB matter. On April 27, 2015, the day before the due process meeting was to take place, the plaintiff provided the County with a doctor's note from Michael J. Fox, M.D., that stated "due to her medical condition, [Plaintiff] is unable to work at this time" and that the plaintiff was undergoing "evaluation and treatment." As a result of her absence, the plaintiff did not attend the April 28, 2015 due process meeting. As a result, a letter was sent to the plaintiff rescheduling the due process meeting for May 26, 2015. The plaintiff does not dispute this, but testified that she was avoiding certified mail because she assumed the letter was related to a traffic ticket her husband received and, as such, she did not pick the letter up at the post office in time to attend the meeting. In the meantime, by letter dated May 5,

_____

[3]Although the plaintiff initially testified that she did not remember there being a meeting scheduled for April 28, 2015, she subsequently testified at length about being informed by Mr. Kavulich of concerns regarding her handling of one of her cases and a meeting being scheduled.

2015, Dr. Fox indicated that the plaintiff was undergoing treatment for depression/anxiety and panic disorder. It was indicated that "[o]nce she has improved enough to be able to function at work she will return." Dr. Fox estimated that it would be 3-4 weeks, but that it could be sooner. The plaintiff did not attend the May 26, 2015, meeting.

During the course of her employment with OYFS, the plaintiff twice used FMLA leave. The County granted the plaintiff FMLA leave following the birth of each of her two children, the first in 2002 and the second in 2007. On each of those occasions when the plaintiff was granted FMLA leave, she submitted the proper FMLA paperwork to the County and was permitted to return to work without incident following the expiration of her leave periods.

Sometime between January, when the plaintiff indicated she was assigned an increased workload, and April 2015, the time of the BB matter, the plaintiff told Mr. Davis and Mr. Kavulich that she thought she had post-traumatic stress disorder ("PTSD"). In fact, the plaintiff told Mr. Davis and Mr. Kavulich that she had been previously diagnosed with PTSD by a counselor, after which they repeatedly encouraged her to go to counseling. The plaintiff testified that she thought Mr. Davis and Mr. Kavulich were being helpful when they suggested that she go to counseling, but indicated that she never went

because she was working up to 14-hour days to keep up with her caseload. Moreover, although the plaintiff was offered to go to counseling during work hours, she said she did not do so because she was also being pressured to get her work done.

On June 8, 2015, the plaintiff submitted a certification in support of her FMLA leave. By notice dated June 9, 2015, the plaintiff was informed that her FMLA leave request was not approved because her WH-380-E certification form was not submitted within the 30-day requirement.

On June 15, 2015, the due process meeting regarding the plaintiff's handling of the BB matter was held. At the conclusion of the meeting, the plaintiff was suspended pending termination. On June 16, 2015, the plaintiff was issued a letter indicating, in part,

> Effective June 15, 2015, you were suspended without pay pending termination for Neglect of Duty where persons are endangered according to the Office of Youth and Family Services Discipline Policy for granting an alleged sex offender permission to supervise minor children alone while he was under investigation for sex crimes. The perpetrator later admitted to the sex crimes. The prescribed discipline for the aforementioned violation is suspension pending termination. In addition, you were on unapproved leave for several weeks in violation of the County Leave/FMLA policy and OYFS discipline policy. Efforts to contact you via certified mail and regular mail (FMLA application) were unsuccessful in that you admitted to actively ignoring said notifications.

In retrospect, the plaintiff testified that she could have handled the BB matter better and her supervisors "definitely should have talked about what had happened." Although the plaintiff believes that her termination was unwarranted, she testified that others had been disciplined in the past for similar conduct and, in fact, other caseworkers had been terminated for neglect of duty where persons had been endangered.

With respect to the plaintiff's claims against AFSCME, the undisputed facts of record demonstrate that AFSCME District Council 87 is the certified collective bargaining agent for a bargaining unit of employees employed by OYFS, including the plaintiff when she was employed by the County.[4] AFSCME Local 524 represents, at the local level, employees of OYFS. AFSCME and the County are parties to a collective bargaining agreement

---

[4]The plaintiff's counsel denies this fact, as stated, indicating that the documents cited by defendant AFSCME in support of the fact speak for themselves. Upon review, the documents accurately reflect what defendant AFSCME has provided in its statement of facts and, therefore, the court deems the fact undisputed.

The plaintiff's counsel proceeds to set forth various duties and obligations that she argues defendant AFSCME had with respect to the plaintiff, which are unrelated and unresponsive to this particular statement of fact. In order not to waste the time of the court and further delay decisions on such matters, where a statement is denied, counsel is reminded to substantively respond, with appropriate record citations, to the particular fact being denied.

("CBA") that governs the terms and conditions of employment for employees in the OYFS bargaining unit, including the plaintiff when she was employed by the County.

As previously discussed, by letter from her physician, Dr. Fox, dated April 27, 2015, and presented to Brian Loughney, Employer Representative, the plaintiff notified her employer that she was unable to work "at this time" due to a "medical condition" for which she was "undergoing evaluation and treatment". The following day, April 28, 2015, Mr. Loughney completed a FMLA Notice of Eligibility and Rights & Responsibilities addressed to the plaintiff. The notice indicates that, on April 27, 2015, the plaintiff informed her employer that she needed leave beginning that same day for "[her] own serious health condition". The notice informed the plaintiff that she was eligible for FMLA leave and referred her to Part B of the form for her Rights and Responsibilities. Part B of the form is as follows:

PART B-RIGHTS AND RESPONSIBILITIES FOR TAKING FMLA LEAVE

As explained in Part A, you meet the eligibility requirements for taking FMLA leave and still have FMLA leave available in the applicable 12-month period. However, in order for us to determine whether your absence qualifies as FMLA leave, you must return the following information to us by WH - 380- E _____ . (If a certification is requested, employers must allow at least 15 calendar days from receipt of this notice; additional time may be required in some circumstances.) If sufficient information is not provided in a timely manner, your leave may be denied.

X Sufficient certification to support your request for FMLA leave. A certification form that sets forth the information necessary to support your request X is/____ is not enclosed.

____ Sufficient documentation to establish the required relationship between you and your family member.

X No additional information needed

____ Other information needed: _____

Lackawanna County            FMLA Eligibility, Rights & Responsibilities

13

To the extent that the plaintiff had any questions regarding the form, she was instructed to call her supervisor, Mr. Browning.

Despite the language contained in Part B, the plaintiff testified that she did not think there was anything else she needed to do with regard to her FMLA leave. There is no indication in the record that she confirmed this with Mr. Browning.

In early June 2015, AFSCME Local 524 Steward Lou Strazzeri, with whom the plaintiff professed a good relationship both before and after her termination, called the plaintiff to inform her that she needed to return the required FMLA paperwork, or she would risk discipline or termination for being absent without leave. Although she acknowledged her receipt of the FMLA Notice of Eligibility and Rights and Responsibilities form, the plaintiff testified that she did not receive the certification which was marked as included with the notice and required to be returned. After her conversation with Mr. Strazzeri, the plaintiff testified that she went to the office and obtained the certification form from Heather Gibbs in the Human Resources Department. She returned the paperwork on June 8, 2015.

On June 15, 2015, the due process meeting relating to the handling of the BB matter took place, wherein the plaintiff testified that she, Mr. Browning,

Mr. Strazzeri, Mr. Davis, and then-AFSCME Local 524 President Mary Rose Moran were present. Documentation provided to the plaintiff indicates that the meeting was "related to serious concerns of one of [the plaintiff's] cases in addition to overall practice and performance issues." AFSCME District Council 87 Staff Representative Matt Balas was informed of the June 15, 2015, meeting and requested a postponement of the meeting because he was unable to attend. Mr. Loughney informed Mr. Balas that Mr. Strazzeri would be able to attend on behalf of the plaintiff. Mr. Balas testified that it is not unusual for union stewards to attend meetings with the County with bargaining unit members. As indicated, Mr. Strazzeri, in fact, attended the June 15, 2015, meeting with the plaintiff and defended her position that the County should not terminate her. The plaintiff testified that individuals at the meeting discussed the BB matter with her, as well as issues related to her FMLA leave and issues relating to her mental health. Several times during the meeting, the plaintiff and Mr. Strazzeri stepped outside to privately discuss her case.[5] At one point, Mr. Strazzeri expressed to the plaintiff that the County

_____

[5]Although the plaintiff indicates that this fact and the next several do not have record citations, the statements come directly from the affidavit of Mr. Strazzeri, to which the defendant has, in fact, cited. (Doc. 45, Ex. C). The only facts not deemed unopposed by the court in this paragraph of Mr. (continued...)

15

might accept her resignation in lieu of discharge, and that, if she were fired, the Union would file a grievance on her behalf to get her job back. Following his conversation with the plaintiff, Mr. Strazzeri testified that it was his understanding that the plaintiff did not want to return to work with the County. At the conclusion of the meeting, the plaintiff was suspended pending termination.

A letter to the plaintiff dated June 16, 2015, reads, in relevant part, as follows:

> Effective June 15, 2015, you were suspended without pay pending termination for Neglect of Duty where persons are endangered according to the Office of Youth and Family Services Discipline Policy for granting an alleged sex offender permission to supervise minor children alone while he was under investigation for sex crimes. The perpetrator later admitted to the sex crimes. The prescribed discipline for the aforementioned violation is suspension pending termination. In addition, you were on unapproved leave for several weeks in violation of the County Leave/FMLA policy and OYFS discipline policy. Efforts to contact you via certified mail and regular mail (FMLA application) were unsuccessful in that you admitted to actively ignoring said notifications.

On June 17, 2015, Mr. Browning sent a memorandum to Mr. Loughney indicating that the plaintiff had been terminated and that she was entitled to

_____

[5](...continued)
Strazzeri's affidavit are those that are specifically denied by the plaintiff and supported with appropriate record citations.

a period of annual and personal time.  On June 30, 2015, Mr. Strazzeri spoke with Mr. Balas about filing a grievance on the plaintiff's behalf. Mr. Balas, who was also under the impression that the plaintiff did not want to return to work for the County, indicated that, even if the plaintiff did not want her job back, the grievance should be filed so that the Union would be in the best possible position to negotiate a financial settlement for the plaintiff from the County. AFSCME filed a grievance that same day contesting the plaintiff's termination arguing that the plaintiff was terminated without just cause and due process, and that the Union was not notified in writing of the discipline in violation of their contract. The Union sought to make the plaintiff whole by requesting all back wages, reinstatement, and removal of the discipline from the plaintiff's file. Mr. Strazzeri submitted the grievance to Mr. Browning on the day it was filed, at which time, Mr. Browning indicated that he thought the County would agree to pay the plaintiff for accrued but unused vacation and personal time, 20 days of sick time (a full year's worth), and a retroactive raise for 2014 and 2015.[6]

---

[6]The plaintiff denies this statement citing to Mr. Browning's June 17, 2015, memorandum to Mr. Loughney, and indicating that Mr. Browning had already approved the accrued time as standard practice. However, Mr. Browning's memorandum makes no mention of sick time or a retroactive
(continued...)

By e-mail dated July 15, 2015, Mr. Balas contacted Mr. Loughney and requested a meeting concerning the plaintiff's grievance. Mr. Balas expressed his hope that the grievance could be resolved before it went to arbitration. Mr. Strazzeri subsequently sent the plaintiff text messages to inform her of the settlement offer, which provided that she would get paid for her accrued but unused vacation and personal time, 20 days of sick time (a full year's worth), and a retroactive raise for 2014 and 2015. The plaintiff responded to the texts stating "Great."

On August 14, 2015, a meeting took place at which Mr. Balas and Mr. Loughney discussed the Union's grievance filed on behalf of the plaintiff. Based upon the terms previously relayed to the plaintiff, the County agreed to settle the grievance.[7] This settlement provided the plaintiff financial benefits to which she was not entitled under the CBA. Again, Mr. Balas indicated that it was his understanding that the plaintiff did not want to return to work for the County and, therefore, he accepted the settlement instead of proceeding to arbitration. By letter dated August 18, 2015, Mr. Balas relayed to Mr.

---

[6](...continued)
raise for 2014 and 2015.

[7]The plaintiff denies this fact only to the extent that she claims no knowledge of the meeting because she was not included.

Loughney the terms of the settlement of the grievance. Mr. Balas testified that he gave instructions that the plaintiff be copied on the August 18, 2015 letter to Brian Loughney, however, the letter does not reflect that she was copied.

Subsequent to the Union's settlement of her grievance, the plaintiff received the County's check in accordance with the terms of the settlement agreement and cashed it without question. Later, in November or December of 2015, the plaintiff's attorney asked the plaintiff the status of the grievance, after which the plaintiff called Mr. Balas. Until then, the plaintiff had not contacted the Union about the grievance, getting her job back or proceeding to arbitration.

Related to her claims against AFSCME, at some point prior to her termination, the plaintiff asked the Union about filing a grievance related to her increased workload. The plaintiff was informed by Mr. Strazzeri that workload issues were not grievable and that any such grievance would therefore lack merit. No further action was taken with regard to that matter.

### III. DISCUSSION

#### A. AFSCME's Motion for Summary Judgment

The plaintiff asserts two claims against AFSCME. The first claim is for

breach of the duty of fair representation in Count IV. The second claim is for breach of the CBA between AFSCME and the County in Count III.

With respect to her fair representation claim, the plaintiff initially alleges that she requested the Union to file a grievance on her behalf over her workload which increased in January 2015, but the Union refused to process that grievance. The plaintiff also alleges that the Union processed the grievance relating to her termination in bad faith and that the Union conspired with the County in failing to process that grievance to arbitration.

As a public employee, the plaintiff's right to union representation is governed by Pennsylvania's Public Employee Relations Act ("PERA"), 42 P.S. §1101.101, et seq. Under Pennsylvania law, "[a] union bears a duty of fair representation to the members of the bargaining unit that it is certified to serve. In return, the members and employees are beneficiaries of a fiduciary obligation owed to them by the union." Plouffe v. Gambone, 2012 WL 2343381, at *9 (E.D.Pa. Jun. 20, 2012) (citing Falsetti v. Local Union No. 2026, 161 A.2d 882, 895 (Pa. 1960); Case v. Hazelton Area Educ. Support Personnel Ass'n, 928 A.2d 1154, 1158 (Pa. Commw. Ct. 2007)). A union may breach its duty of fair representation if its actions are "arbitrary, discriminatory, or in bad faith." Acosta v. HOVENSA LLC, 529 Fed.Appx. 297, 299-300 (3d

Cir. 2013) (quoting <u>Air Line Pilots Ass'n, Int'l v. O'Neill</u>, 499 U.S. 65, 67 (1991)); <u>see also</u> <u>Casner v. Am. Fed'n of State, Cty. and Mun. Emps.</u>, 658 A.2d 865, 870 (Pa. Commw. Ct. 1995).

"To demonstrate bad faith, the plaintiff must show that the union had hostility toward plaintiff or the plaintiff's class and that the hostility negatively affected the union's representation of the plaintiff." <u>Danao v. ABM Janitorial Servs.</u>, 142 F. Supp. 3d 363, 371-72 (E.D. Pa. 2015) (quoting <u>Boyer v. Johnson Matthey, Inc.</u>, 2005 WL 35893, at *9 (E.D. Pa. Jan. 6, 2005)). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." <u>Acosta</u>, 529 Fed.Appx. at 300 (quoting <u>Air Line Pilots Ass'n, Int'l</u>, 499 U.S. at 67). When considering whether a union's actions fall outside that range, courts "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." <u>Air Line Pilots Ass'n, Int'l</u>, 499 U.S. at 78. That standard "gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong," and even if its errors in judgment may rise to the level of negligence. <u>Marquez v. Screen Actors Guild, Inc.</u>, 525 U.S. 33, 45-46 (1998); <u>see also</u> <u>United</u>

21

Steelworkers of Am. v. Rawson, 495 U.S. 362, 372-73 (1990) ("[M]ere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation."); Bazarte v. United Transp. Union, 429 F.2d 868, 872 (3d Cir. 1970) (holding that "proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation" and a union has discretion to "settle or even to abandon a grievance, so long as it does not act arbitrarily"); Weber v. Potter, 338 F. Supp. 2d 600, 606 (E.D. Pa. 2004) ("[A] union has broad discretion to determine what issues to raise in a grievance proceeding and how those issues are to be raised.").

Still, it is well-established that a union must "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Marquez, 525 U.S. at 44 (quotations omitted). To fulfill the duty of fair representation a union's representation "must be vigorous enough so that available opportunities to present [a] grievance are utilized and sufficiently thorough so that the basic issues are presented in an understandable fashion." Findley v. Jones Motor Freight, Division Allegheny Corp., 639 F.2d 953, 961 (3d Cir. 1981). A union "may not arbitrarily ignore a meritorious

grievance or process it in a perfunctory fashion." Lopresti v. County of Lehigh,

2013 WL 2449190, at *4 (quoting Riley v. Letter Carriers Local No. 380, 668

F.2d 224, 228 (3d Cir. 1981)), aff'd, 572 Fed.Appx. 133 (3d Cir. 2014).

In its motion for summary judgment, AFSCME argues that, to the extent

the plaintiff challenges the Union's decision not to file a grievance relating to

her increased workload, a union has broad discretion to make decisions

regarding the processing of grievances and, in that discretion, it may decline

to pursue frivolous or meritless grievances. Martino v. Transport Workers'

Union of Philadelphia, Local 234, 480 A.2d 242, 250 n.12 (Pa. 1984) (high

standard for fair representation claims "insulates the union from exposure

where, after a proper exercise of discretion, it declines to process a frivolous

and meritless grievance."). Here, the plaintiff requested that a grievance be

filed with respect to her increased workload. The plaintiff acknowledges in her

testimony that the Union communicated to her that the assignment of duties

was not a grievable issue and that the grievance, therefore, lacked merit and

would not be filed. The plaintiff has presented no evidence that the Union was

under an obligation to pursue such a grievance, or that its failure to do so was

in bad faith. Because unions possess broad discretion to determine whether

to pursue a grievance and are not required to pursue grievances which lack

merit, AFSCME's motion for summary judgment will be granted in this respect.

To the extent that the plaintiff challenges the Union's handling of the grievance related to her termination and the Union's failure to pursue that grievance to arbitration, AFSCME argues that the plaintiff is required to establish that the Union's decision was based on arbitrariness, discrimination or bad faith, which the plaintiff has failed to do.[8] The record indicates that both Mr. Balas and Mr. Strazzeri were of the understanding that the plaintiff did not want to return to work for the County after her termination. Nevertheless, they agreed that a grievance should be filed on the plaintiff's behalf in an attempt to get her the best financial resolution possible. A grievance was filed and negotiations took place between the County and the Union on the plaintiff's behalf. Although the plaintiff argues that the defendants never communicated with her about the settlement of her grievance, the record demonstrates that, after negotiating with the County, Mr. Strazzeri sent the plaintiff at least one

_____

[8]In the alternative, AFSCME argues that the plaintiff is not entitled to monetary damages on the fair representation claim. As discussed herein, the court finds that AFSCME is entitled to summary judgment on this claim. As such, the issue of damages need not be addressed.

text message[9] outlining the terms of what the County was willing to offer her, including pay for any accrued but unused vacation and personal time, 20 sick days (a full year's worth), and a retroactive raise for 2014 and 2015. In response to Mr. Strazzeri's communication regarding the terms of the proposed settlement offered by the County, the plaintiff did not object to the offer or indicate that she wanted some other form of relief, but simply responded "Great." Assuming this to constitute the plaintiff's approval of the offer, Mr. Balas accepted the offer of settlement on the plaintiff's behalf and the plaintiff was issued a check for the agreed upon monies. Thereafter, the plaintiff received and cashed the settlement check without question. At no time during this process did the plaintiff inquire of the Union about getting her job back, the status of her grievance, or proceeding to arbitration. In fact, it was only after speaking with her attorney that the plaintiff contacted Mr. Balas.

Upon review, there is nothing in the record before the court which reflects bad faith on the part of the Union. There are no facts in the record to demonstrate that the Union had any hostility toward the plaintiff. In fact, the

---

[9]AFSCME provides that the information was contained in one text message, while the plaintiff testified that Mr. Strazzeri sent the information in two separate text messages.

25

plaintiff testified that she had a good relationship with Mr. Strazzeri, who represented her and took part in handling her grievance, both before and after her termination. Although the plaintiff claims that she was never consulted concerning the settlement of her claim, the record demonstrates otherwise, in that Mr. Strazzeri sent the plaintiff at least one text message with the exact terms of the settlement offer, to which the plaintiff responded "Great." Moreover, to the extent that Mr. Strazzeri and Mr. Balas misunderstood what the plaintiff's wishes were with regard to her grievance, the settlement thereof and/or proceeding to arbitration, as discussed above, neither negligence nor mistake rise to the level of a breach of the duty of fair representation. Because the plaintiff has failed to point to any evidence in the record which establishes that AFSCME's actions were in bad faith, as she has alleged, AFSCME is entitled to summary judgment as to the plaintiff's fair representation claim.

With respect to the plaintiff's breach of CBA claim against AFSCME in Count III, under the PERA, where a public employee claims a union has breached its duty of fair representation by acting in bad faith, her sole remedy is an action in equity to compel arbitration. Martino v. Transp. Workers Union, Local 234, 480 A.2d at 252; Waklet-Riker v. Sayre Area Educ. Ass'n, 656

26

A.2d 138, 141 (Pa. Super. 1995). As such, there is no cause of action for breach of contract against a union in connection with its representation of an employee. Waklet-Riker, 656 A.2d at 141 (trial court correctly dismissed claim for breach of contract because such a claim is not cognizable under PERA). Thus, the court will grant AFSCME's motion for summary judgment as to the breach of CBA claim against it.

### B. Lackawanna County defendants' Motion for Summary Judgment

In Count I of the third amended complaint, the plaintiff alleges FMLA interference claiming that the Lackawanna County defendants did not give her the opportunity to cure any deficiency in the certification form she submitted in support of her request for FMLA leave. The Lackawanna County defendants argue in response that the plaintiff did not have a right to a "cure period" because her certification was denied for being untimely, not "incomplete" or "insufficient".

Pursuant to 29 C.F.R. §825.305(c), an employer is required to give an employee a cure period where a certification is either incomplete or insufficient. A certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide

27

certification. Id. FMLA leave may be denied where an employee fails to timely submit required certification form. See Sconfienza v. Verizon Pennsylvania Inc., 307 Fed.Appx. 619 (3d Cir. 2008).

Here, the record demonstrates that the plaintiff's FMLA leave was not approved because her certification was not submitted in a timely manner, not because it was incomplete or insufficient. Therefore, the cure period provided for in §825.305(c) does not apply in the plaintiff's case.

In Count I, the plaintiff also argues that the Lackawanna County defendants failed to provide her with notice of her FMLA rights and responsibilities. In response, the Lackawanna County defendants argue that this portion of the plaintiff's FMLA interference claim fails because it is undisputed that the County provided the plaintiff with notice of her rights and obligations under the FMLA.

The requirements for an employer's eligibility and rights and responsibilities notices are found in 29 C.F.R. §§825.300(b), (c). Form WH-381, created by the Department of Labor, satisfies these notice requirements. See Pellegrino v. Commc'ns Workers of Am., 478 Fed. Appx. 742, 746 (3d Cir. 2012) ("The Department of Labor provides Form WH-381, which she received, as a standard notice that satisfies the regulation's requirements").

Upon review of the record in this case, the plaintiff admits that she received the FMLA Notice of Eligibility and Rights and Responsibilities form ("WH-381") from the County dated one day after she submitted a note from Dr. Fox indicating her need for leave. The WH-381 form notified the plaintiff that she was eligible for FMLA leave and referred her to Part B of the form for her Rights and Responsibilities. Part B explained to the plaintiff that in order for the County to determine whether her absence would qualify as FMLA leave, she was required to return "WH-380-E," a certification form. The plaintiff was advised that the employer must allow at least 15 calendar days to return the form[10] and, if sufficient information was not provided in a timely manner, her FMLA leave could be denied. Thereafter, a check mark was placed next to an entry indicating that the plaintiff was to provide "Sufficient certification to support your request for FMLA leave." Another checked area

---

[10]The cover letter accompanying the Notice of Eligibility and Rights and Responsibilities form allowed the plaintiff a total of 30 days to return the form. However, the plaintiff testified that she did not remember receiving the cover letter with the notice form. Nevertheless, the WH-381 form which the plaintiff admitted she received provided that she should call her supervisor, Mr. Brown, with any questions relating to the submission of the form. The record does not reflect that the plaintiff contacted Mr. Brown for any reason related to the form.

indicates that the necessary certification form was enclosed.[11] Otherwise, the form indicates "No additional information needed." In light of the plaintiff's testimony indicating that she received the WH-381 form, her claim that the Lackawanna County defendants interfered with her FMLA rights by failing to provide her with written notice of her rights and responsibilities is without merit and the Lackawanna County defendants are entitled to summary judgment as to this claim.

In Count II of the third amended complaint, the plaintiff alleges that the Lackawanna County defendants terminated her in retaliation for her submitting her FMLA certification paperwork on or about June 8, 2015. The Lackawanna County defendants argue that the plaintiff's FMLA retaliation claim in Count II fails because the plaintiff's termination was not causally related to her seeking FMLA leave.

An FMLA retaliation claim requires proof of the employer's retaliatory intent, and courts have applied the familiar McDonnell Douglas burden shifting approach used in employment discrimination cases in order to evaluate an employer's retaliatory intent. Pulchalski v. Franklin Cty., 2016 WL 6902412,

---

[11]The plaintiff indicates that she did not receive the certification form which was noted to be enclosed.

at \*5 (M.D. Pa. Sept. 27, 2016) (citing <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 302 (3d Cir. 2012)), *report and recommendation adopted*, 2016 WL 6879709 (M.D. Pa. Nov. 22, 2016); see also <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[12] First, to establish a *prima facie* retaliation claim under the FMLA, the plaintiff must show that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights. <u>Id.</u> The Third Circuit has described two main factors that are relevant to the causation element of a prima facie case of FMLA retaliation: (1) timing or (2) evidence of ongoing antagonism. <u>Popko v. Penn State Milton S. Hershey Med. Ctr.</u>, 2017 WL 1078158, at \*9 (M.D. Pa. Mar. 22, 2017) (citing <u>Abramson v. Wm. Paterson College of N.J.</u>, 260 F.3d 265, 288 (3d Cir. 2001)). If the plaintiff can establish a *prima facie* case, the burden of production then shifts to the employer to "articulate some legitimate,

---

[12]Although the plaintiff attempts to argue otherwise, the court finds that the plaintiff has failed to produce sufficient evidence to apply the less burdensome <u>Price Waterhouse</u> mixed-motives framework. <u>See</u> <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989). However, even if the less burdensome framework were applied here, the record demonstrates that the County would have made the decision to terminate the plaintiff even removing any illegitimate factor from the equation, as OYFS's policy required that the only sanction for Neglect of Duty Where Persons are Endangered is suspension pending termination. <u>See</u> <u>Conoshenti</u>, 364 F.3d at 147-48.

nondiscriminatory reason" for its decision. <u>McDonnell Douglas</u>, 411 U.S. at 802. If the employer meets this relatively light burden, the plaintiff must then point to "some evidence, direct or circumstantial, from which a fact finder could reasonably . . . disbelieve [the employer's] articulated legitimate reasons." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994).

Here, as to the causation element of the plaintiff's *prima facie* case, the record demonstrates that the plaintiff submitted her FMLA certification on June 8, 2015, and was terminated effective June 16, 2015. However, the record further demonstrates that, in April 2015, well before the plaintiff's submission of her FMLA paperwork and after a case review of the plaintiff's handling of the BB matter, the plaintiff was informed that there were serious concerns with regard to her handling of the matter and that a meeting would be held to address the concerns. It was determined that the plaintiff had committed the infraction of Neglect of Duty Where Persons are Endangered. According to OYFS policy, the only discipline for such an infraction is suspension pending removal. The plaintiff testified that she discussed the scheduled meeting with Mr. Kavulich and Mr. Davis, who both seemed upset about the matter. The plaintiff expressed that she was worried that she would be terminated at the meeting. She testified that, in retrospect, she should

have handled the BB matter differently and that others had been terminated for similar conduct. After the meeting was eventually held, the plaintiff was suspended pending termination and issued a termination letter. The plaintiff's termination letter reflects that she "was suspended without pay for Neglect of Duty where persons are endangered for granting an alleged sex offender permission to supervise minor children alone while he was under investigation for sex crimes. The perpetrator later admitted to the sex crimes." The termination letter reflects that "the prescribed discipline for such a violation is suspension pending termination." As an aside, the letter states that the plaintiff was out on unapproved leave for several weeks in violation of the County Leave/FMLA policy. However, it is clear from the letter that the plaintiff was suspended and ultimately terminated for her actions in the BB matter, and not the unapproved leave issue. The plaintiff has failed to raise any genuine issue of fact to demonstrate that it was the submission of her FMLA paperwork, rather than her handling of the BB matter, that caused her termination.

However, even if the plaintiff could establish a *prima facie* case of retaliation, the burden of production then shifts to the Lackawanna County defendants to articulate a legitimate, nondiscriminatory reason for their

decision to terminate the plaintiff. In light of the facts surrounding the BB matter, as set forth above, the Lackawanna County defendants have articulated a legitimate nondiscriminatory reason for the plaintiffs termination. Thus, the burden of defeating summary judgment shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason is pretext for discrimination. See Larochelle v. Wilmac Corp., 210 F.Supp.3d 658, 678 (E.D.Pa. 2016). In doing so, the plaintiff must present evidence sufficient to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" that a factfinder could reasonably disbelieve that the employer's reason for termination was nondiscriminatory. Willis v. UPMC Children's Hosp., 808 F.3d 638, 644-45 (3d Cir. 2015).

Here, the plaintiff has not met her burden of establishing pretext. In an attempt to do so, the plaintiff points to the fact that she was successful at her unemployment compensation hearing. However, such proceedings provide for a "willful misconduct" standard that is not applicable here. In addition, the plaintiff cites to the language in her termination letter referring to her unauthorized leave to demonstrate pretext. However, as addressed previously, the clear reason set forth for the plaintiff's termination in the letter

was the infraction related to the BB case, not the plaintiff's request for FMLA leave. The fact that the letter references that the plaintiff was on unauthorized leave does not present sufficient evidence from which a factfinder could reasonably disbelieve that the plaintiff was terminated for her actions in the BB matter as articulated by the Lackawanna County defendants. Finally, the plaintiff argues that the Lackawanna County defendants' articulated reason for her termination is pretextual because AB did not actually harm the other children in the BB matter and, therefore, she believes her termination was not warranted. The fact that the plaintiff believes she should not have been terminated because AB did not actually harm the other children as a result of her actions is insufficient to refute the Lackawanna County defendants' articulated reason. See Fuentes, 32 F.3d at 763-64. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Id.

In Count III of her third amended complaint, the plaintiff alleges that, pursuant to the CBA, she could only be fired for just cause and the County did not have just cause to fire her. The plaintiff alleges that the County conspired with the Union to deprive her of her contractual rights under the CBA, as demonstrated by the fact that the County and Union settled her grievance for

what she was already entitled to, i.e., unused time and pay. The Lackawanna County defendants argue that the plaintiff's breach of contract claim contained in Count III fails for lack of a viable civil conspiracy.

"[I]n Pennsylvania, as a general rule, an aggrieved public employee has no right to sue his or her employer for breach of a collective bargaining agreement.'" Lawson v. City of Coatsville, 42 F.Supp.3d 664, 684 (E.D.Pa. 2014). An exception to this, however, is 'where an employee alleges and shows by specific facts that an employer actively participated in the union's bad faith or conspired with the union to deny the employee [her] rights under the collective bargaining agreement.'" Id. (emphasis added). In order "[t]o prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act." Id. "In other words, '[t]here must be a combination, and agreement, a breathing together, and concerted action towards the common purpose.'" Id.

Here, the plaintiff alleges that the County and the Union conspired to deprive her of her contractual rights under the CBA by settling her grievance for unused time and pay to which she was already entitled. However, these allegations alone are insufficient to establish a conspiracy between the Lackawanna County defendants and AFSCME. Initially, the court has already

determined that AFSCME did not act in bad faith in the handling of the plaintiff's grievance. Moreover, the plaintiff has pointed to no evidence in the record which establishes that there was an agreement between the Lackawanna County defendants and the Union to terminate her in violation of the just cause provisions of the CBA. She has produced nothing rising to the level of specific facts to support the claimed existence of an agreement between the County and AFSCME. See Lopresti v. Cty. of Lehigh, 2013 WL 2449190, at *9 (citations omitted). See also Hughes v. Council 13, Am. Fed'n of State, Cnty. & Mun. Emp., AFL–CIO, 629 A.2d 194, 195 (Pa. Commw. Ct.1993) ("In order to survive a motion for summary judgment, the petitioner must allege . . . specific facts; mere conclusory allegations in the pleading without supporting factual allegations are not sufficient."). Since the plaintiff has failed to point to any evidence in the record of a viable conspiracy, she cannot demonstrate liability on the part of the Lackawanna County defendants for breach of the CBA, and the Lackawanna County defendants are entitled to summary judgment on Count III of the plaintiff's third amended complaint.

In Count V of her third amended complaint, the plaintiff alleges

discrimination and retaliation under the ADA and PHRA.[13] The plaintiff alleges

that she suffers from anxiety, depression and panic disorder. She contends

that the County knew she had a disability, had a record of impairment, and/or

regarded her as disabled. At all relevant times, the plaintiff alleges that she

could perform the essential functions of her job with accommodations. On

April 27, 2015, the plaintiff alleges that she requested a leave of absence due

to her medical condition that was exacerbated by an increase in her workload.

Thereafter, on June 8, 2015, the plaintiff alleges that she submitted an FMLA

certification and, on June 15, 2015 she was suspended pending termination.

The plaintiff alleges that her suspension and termination were directly related

to her medical condition. She further alleges that it was in retaliation for

requesting an accommodation in the nature of leave under the FMLA.

As with the plaintiff's FMLA retaliation claim, a discrimination claim

under the ADA is subject to the McDonnell Douglas burden-shifting

framework. See Walton v. Mental Health Ass'n of Southeastern Pennsylvania,

168 F.3d 661, 667-68 (3d Cir. 1999) (applying McDonnell Douglas to a

discrimination claim under the ADA). In order to establish an ADA *prima facie*

---

[13]The analysis of an ADA claim applies equally to a PHRA claim. Taylor
v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citing Kelly v.
Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)).

case of discrimination, the plaintiff must prove that she "(1) has a disability; (2) was otherwise qualified to perform her job; and (3) was subject to discrimination because of her disability." Chambers ex. rel Chambers v. School Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009).

In addition, the plaintiff's retaliation claim under the ADA is subject to the McDonnell Douglas burden-shifting framework. Derrick F. v. Red Lion Area School Dist., 586 F. Supp. 2d 282, 299 (M.D.Pa. 2008). In order to establish her *prima facie* case of retaliation under the ADA, the plaintiff must prove: (1) that she engaged in protected activity; (2) adverse action was taken by the defendant either during or after the protected activity that was sufficient to deter a person of ordinary firmness from engaging in protected activity; and (3) a causal connection between the protected activity and the adverse action. Id. at 300 (citing Shaner v. Synthes, 204 F.3d 494, 494 (3d Cir. 2000); Hesling v. Seidenberger, 286 Fed. Appx. 773, 773-75 (3d Cir. 2008)).

As discussed above, even if the plaintiff could establish a *prima facie* case of ADA discrimination or retaliation, the Lackawanna County defendants have set forth a legitimate nondiscriminatory reason for the plaintiff's termination, i.e., her actions in the BB matter. As discussed above, the plaintiff has failed to meet her burden of demonstrating that the Lackawanna

County defendants' proffered reason is pretextual. For the reasons set forth above, the Lackawanna County defendants' motion for summary judgment will be granted with respect to the plaintiff's ADA discrimination and retaliation claims set forth in Count V of the third amended complaint.

Finally, in Count VI of the plaintiff's third amended complaint, she alleges that defendant Browning aided and abetted the County in their discrimination and retaliation. Because the court finds that the Lackawanna County defendants are entitled to summary judgment as to Count V, the plaintiff's claim in Count VI of aiding and abetting must also necessary fail. An individual can not be held liable for aiding and abetting non-existent discrimination or retaliation. See Smith v. Univ. of Scranton, 2018 WL 3361060, at *6 (M.D. Pa. July 10, 2018) (citing Carroll v. Comprehensive Women's Health Servs., 2017 WL 4284386, at *6 n.4 (M.D. Pa. Sep. 27, 2017)). Therefore, the Lackawanna County defendants are entitled to summary judgment as to Count VI.

### III.    CONCLUSION

In accordance with the foregoing, AFSCME's motion for summary judgment, (Doc. 45), and the Lackawanna County defendants' motion for

summary judgment, (Doc. 48), will be **GRANTED**. An appropriate order shall

issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Date:  March 30, 2019**
15-2511-03.wpd